LAS MONJAS RACING CORPORATION, Plaintiff and Appellee, *v.* INSULAR RACING COMMISSION OF PUERTO RICO, Defendant and Appellant.

No. 7937.  Argued May 2, 1940.—Decided June 14, 1940.

*Diego O. Marrero* for appellant.  *Leopoldo Feliú* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

On December 12, 1938, the Insular Racing Commission demanded from Las Monjas Racing Corporation the furnishing of a bond in the sum of $200, in cash, to cover the expenses

which the commission might have to incur in connection with the supervision and direction of the horse races to be held in Las Monjas Race Track, and at the same time it warned said corporation that if it failed to furnish the said bond, the Insular Racing Commission would omit to designate the employees or officers who, in accordance with the law and the regulations of the commission, must be present and act in the race tracks on the days when races are held.

Feeling aggrieved by the action of the commission and having advertised for certain races to be held on December 25, 1938, Las Monjas Racing Corporation applied to the District Court of San Juan for an injunction to restrain the defendant commission from requiring from the plaintiff the furnishing of any bond, and likewise to restrain it from abstaining to provide, designate, or appoint the employees who, in accordance with the law and the regulations, said commission was bound to appoint for the race track of the plaintiff.

An order to show cause having been issued, the defendant commission appeared and filed a demurrer to the petition on the grounds: (*a*) that there was a misjoinder of causes of action; (*b*) that the complaint was ambiguous and un-certain; and (*c*) that a writ of injunction did not lie in this case because what the petitioner sought was to have the commission abstain from complying with the lawful provisions of a statute enacted for the benefit of the public.

On December 21, 1938, the district court issued a preliminary injunction. Thereupon, the commission took the present appeal and in support thereof it urges: that the lower court erred in overruling the grounds of demurrer; in granting the preliminary injunction without having before it any evidence to support the petition; and in granting the injunction in the terms in which the same was issued.

The first ground of demurrer directed against the petition referred to an alleged misjoinder of two causes of action. The appellant urges that two purposes were

sought by the petition: (1) to restrain the defendant from requiring a bond; and (2) to compel the commission to appoint the officers and employees for the races which the petitioner proposed to hold. It argues that, although it is true that the first purpose might be attained through a writ of injunction, it is otherwise as to the second purpose, for it would be equivalent to compelling the performance of ministerial duties through an injunction instead of resorting to mandamus, which is the proper legal remedy for that purpose.

We think that the lower court did not err in overruling said ground of demurrer. There was no misjoinder of causes of action. Only one cause of action was set forth. In accordance with the facts alleged in the petition and admitted as true under the demurrer, the commission required a bond and threatened to abstain from designating the employees if such requirement was not complied with. In order to set aside that requirement and to prevent the carrying out of said threat, an injunction was sought. If the relief prayed for by the petitioner and granted by the court had been confined to enjoining the commission from requiring the bond, thus leaving the commission free to carry out its threat not to appoint the necessary officers and employees for the petitioner to hold the races, the writ of injunction would have become academic, as the petitioner would have had to face the alternative of either furnishing the bond in spite of the injunction, or forego the holding of the races for lack of the employees required by law, and who, as alleged, the commission was bound to appoint.

The district court had jurisdiction over the litigants and power and jurisdiction to prohibit the defendant commission from requiring of the petitioning corporation to furnish a bond that the commission had no right to demand. In these circumstances, and there being involved an equitable proceeding such as that of injunction, the court was bound to exercise its powers and to retain its jurisdiction in order to do

entire justice and to prevent its decree from being disobeyed or ignored through acts or omissions committed or incurred for the sole purpose of evading compliance with such decree.

The following paragraphs taken from Corpus Juris are applicable to the situation presented by the case at bar:

"It is a well-settled rule that a court of equity which has obtained jurisdiction of a controversy on any ground, or for any purpose, will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter, particularly with respect to the enforcement of its own decree. . . . Before the rule can be applied, some ground of equitable jurisdiction must first be asserted and established, and the subject to be adjudicated must be something incidental thereto, or so closely connected therewith as to render its determination necessary to a final decision of the whole controversy between the parties.

"The provisions of codes and practice acts with reference to joinder of causes of action and counterclaims have not changed the rule with regard to retention of jurisdiction in equitable actions." 21 C. J., sec. 117, page 134.

"By virtue of this rule, a court of equity, when its jurisdiction has been invoked for any equitable purpose, will proceed to determine any other equities existing between the parties, connected with the main subject of the suit, and grant all relief necessary to an entire adjustment of such subject, provided it is authorized by the pleadings." 21 C. J., sec. 118, page 137.

"* * * * * * * *

"It is a general rule that where the controversy requires any purely equitable relief, such as will give a court of equity the right to act, the court will proceed to a final determination of all the matters at issue, and in doing so, it may establish purely legal rights and grant legal remedies, which would otherwise be beyond its power, such as rendering personal decrees for money, or as damages for breach of contract. This doctrine prevails not only in code states, but also in states where courts of law and chancery are separately maintained.

"* * * * * * * *

"The court, having once taken rightful cognizance of a cause, is empowered and required to afford complete relief, even though it incidentally involves the granting of a remedy ordinarily administered by the court in a special proceeding." 21 C. J. 138, sec. 119.

The ground of demurrer relating to the supposed ambiguity of the petition lacks merit. The averments of the petition are clear and present no doubt whatever.

The second assignment of error is based on the action of the lower court in issuing the preliminary injunction without taking any evidence and without giving the defendant an opportunity to answer the complaint.

The appellant has no cause for complaint. In its argument under this assignment of error it overlooks the fact that what the lower court entered was an order for an injunction *pendente lite* and not a decree for a permanent injunction. The defendant was served with process and required to show cause why the writ sought should not be issued. It appeared on the day set and it chose to demur to the petition, thus admitting the truth of the facts alleged therein. In order to grant the preliminary injunction the court was not bound to take evidence, since all the facts alleged in the petition and not controverted by the defendant made out a *prima facie* case in favor of the petitioner. See *Municipality of Gurabo* v. *Juncos Central Co.*, 18 P.R.R. 398, 404; sections 5, 6, 8 and 10 of the Injunction Act, approved March 8, 1906.

The question involved in the third assignment of error is as follows: Is the Insular Racing Commission legally empowered to require the furnishing of the bond demanded by it from the plaintiff corporation?

Section 5 of the Racing Act of Puerto Rico (Act No. 11 of 1932), as amended by Act No. 17 of July 15, 1935 (Session Laws (2), p. 92), empowers the Insular Racing Commission to regulate all matters concerning the sport of racing, to prescribe rules for the holding of horse races, and to regulate all matters connected with the manner in which bets are to be made.

According to section 29 of said Racing Act, the funds of the commission are formed by 15 per cent of the total amount derived from the deduction made in the *bancas* and subscrip-

tion funds, and 19 per cent of the total amount derived from the deduction from the amount of the pool and of the *mutuels*.

Section 31 of the same act provides that the commission shall dispose of not more than 70 per cent of said receipts for the payment of the *per diems* of its members and its officers and its current expenses, and to contribute towards increasing the prizes in the races, etc. The remaining 30 per cent shall be devoted to the school lunch rooms and to charitable institutions.

Section 23½ provides that the commission shall require such persons as are responsible for the management of the funds in the race tracks in operation to furnish bonds in order to guarantee the money bet in the various systems of betting.

The appellant commission argues that, in accordance with section 5 of the Racing Act, it is empowered to adopt and enforce article 39 of its Regulations, by virtue of which the furnishing of the bond in question was required, and which reads as follows:

"The Insular Racing Commission reserves the right to require a person holding a license for the operation of a race track in Puerto Rico to furnish a bond in an amount sufficient to cover the expenses which the Insular Racing Commission may have to incur for the supervision and direction of the horse races to be held in said race track and of the betting which may be effected in the pool and *bancas* when races are held in two or more race tracks on the same day."

The first question to be considered and decided is whether the Racing Commission is empowered to impose on the owner of a race track the obligation to pay the expenses which it may have to incur in connection with the supervision of the horse races and the *bancas* on the days when races are held in two or more race tracks. If such obligation can not be imposed, then article 39 of the Regulations of the Commission, *supra*, must be held to be *ultra vires* and void, as it would not be logical to maintain that the furnishing of a bond to secure a nonexistent obligation could be required.

The Racing Act (section 29) specifically states what are the sources of revenue available to the Racing Commission for the raising of its funds. In the exercise of its fiscal powers the Legislature imposed on the operators of race tracks, *bancas,* subscription funds, pools, and any other system of betting, the obligation to pay to the commission 15 per cent or 19 per cent, as the case might be, of the amounts derived from deductions made from the money bet on the horse races. Said sums are covered into the funds of the commission for the purpose of paying *per diems,* current expenses, purses, etc.

The administrative powers granted by section 5 of the Racing Act, No. 11 of 1932, to the Racing Commission to regulate the sport of racing, the horse races, and the bets do not include, in our judgment, the fiscal power to impose on the owner of a race track an additional contribution, by compelling him to pay the expenses which the commission may have to incur in connection with the holding of races on the same day in two or more race tracks. In the absence of an express legislative delegation of power authorizing such imposition, we feel constrained to hold that article 39 of the Regulations of the commission, *supra,* is *ultra vires* and as such, void. Since the commission has no power to require the payment of such additional contribution, neither has it the power to require the furnishing of a bond.

The order appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.